**UNITED STATES of America, Plaintiff,**

**v.**

**Elawrence DAVIS, Defendant.**

**No. IP 91–1226–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 14, 1992.

Jill E. Zengler, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, Ind., for plaintiff.

Elawrence Davis, Kokomo, Ind., for defendant.

## ENTRY

BARKER, District Judge.

This Court conducted a trial on April 22, 1992 to determine if the defendant, Elawrence Davis, is indebted to the plaintiff, the United States, for a defaulted student loan. Based on the evidence submitted at trial and the post-trial submissions, this Court makes the following Findings of Fact and Conclusions of Law:

### I. Findings of Fact

1. Elawrence Davis defaulted on a $4565 student loan[1] (guaranteed under the Higher Education Act of 1965, as amended, codified at 20 U.S.C. § 1071 *et seq.*) on January 1, 1977.

2. Davis filed for bankruptcy on November 8, 1977. Davis' debts were discharged on June 6, 1978, and his bankruptcy case was closed on June 8, 1978.

3. When Davis filed for bankruptcy, he was earning approximately $20,000 a year, he had two children, and his wife (he was still married) was not employed; his wife started teaching part-time after Davis filed for bankruptcy.

4. The bankruptcy court docket sheet—the only documentation provided by either party regarding Davis' bankruptcy—does not disclose which debts were discharged and which were not. The docket sheet does not make particular mention of the student loan as to whether it was discharged by the bankruptcy court or whether the United States filed a complaint in the bankruptcy court seeking a determination of the dischargeability of the debt.

5. Davis is currently employed by the Kokomo Housing Authority and receives a salary of approximately $36,000 a year. Davis may be subject to a salary freeze next year, but he expects that his salary will increase over time.

6. Davis is now divorced and his three children (the youngest of which is five) live with his ex-wife, their mother.

7. Davis testified that he pays approximately $300 per month for his children's medical expenses and $350 per month for their health insurance. Davis pays approximately $1100 annually in personal medical expenses.

8. Davis does not own a car.

9. Davis leases an apartment for $312 per month.

10. Davis testified that the Veterans Administration has recently demanded payment on a defaulted $12,000 loan.

### II. Conclusions of Law

Dischargeability of the Student Loan Debt

1. To prevail in this action, Davis must prove by a preponderance of the evidence that the bankruptcy court discharged the student loan debt or that payment of that debt at this time would create an "undue hardship." *See In re Conner,* 89 B.R. 744 (Bkrtcy.N.D.Ill.1988); *In re W.L. Bradley Co., Inc.,* 78 B.R. 92 (Bkrtcy. E.D.Pa.1987); *see also* 20 U.S.C. § 1087–3, *repealed by* Act of November 6, 1978, Pub.L. No. 95–598, § 317, 92 Stat. 2678.

2. Section 439A of the Higher Education Act, at the time Davis filed for bankruptcy, *see United States v. Bradburn,* 75 B.R. 108, 110 (Bkrtcy.S.D.Ind.1987) (the presumption and the extent of dischargeability is controlled by the law in effect when the debtor files for bankruptcy), provided that student loans were presumptively nondischargeable in bankruptcy, unless the debt had been due and owing for five years, "except that prior to the expiration of the five year period, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents." 20 U.S.C. § 1087–3, *repealed by* Act of November 6, 1978, Pub.L. No. 95–598, § 317, 92 Stat. 2678; *United States v. Bradburn,* 75 B.R. at 110.

3. "Section 439A of the Higher Education Act was intended to be self-executing, and the government was not required

---

1. Davis, after defaulting, made a one time payment of $30 on the loan. The current amount of principal outstanding on the loan is therefore $4535.

to file a complaint to determine the nondischargeability of the student loan debt." *Bradburn, supra; see United States v. Wood,* 925 F.2d 1580, 1583 (7th Cir.1991) ("Congress has created a presumption that student loans are nondischargeable in bankruptcy, and therefore the burden of challenging that presumption falls on the debtor."). Therefore, the United States was not required to file a complaint in the bankruptcy proceeding to determine if Davis' student loan debt was nondischargeable. *Id.*

■ 4. " 'Undue hardship' is not merely severe financial difficulty. It is presumed that all Debtors who file bankruptcy petitions are in severe financial difficulties. To prove 'undue hardship,' one must be suffering from truly severe, and even uniquely difficult circumstances." *In re Craig,* 64 B.R. 854, 857 (Bkrtcy.W.D.Pa.1986).

5. Courts consider several factors in determining undue hardship, including "the debtor's employment status, his future employment and income prospects, his skills and educational level, and any factors which relate to his health, the marketability of his skills or his responsibility for small dependent children." *In re Kammerud,* 15 B.R. 1, 9 (Bkrtcy.S.D.Ohio 1980) (citations omitted). In considering these factors, courts pose the question, "Will the Debtor's future financial resources for the longest foreseeable period of time allowed for repayment of the loan, be sufficient to support the Debtor and her dependent at a subsistence or poverty standard of living, as well as to fund repayment of the student loan?" *In re Craig,* 64 B.R. 854, 856

(Bkrtcy.W.D.Pa.1986); *accord Roberson v. Illinois Student Assistance Commission,* 138 B.R. 885, 888 (N.D.Ill.1992).

■ 6. Upon review of Davis' testimony and the record as a whole, this Court concludes that Davis has failed to prove (by a preponderance of the evidence) that the bankruptcy court discharged the student loan debt and/or found undue hardship. (Davis conceded during cross-examination that his student loan debt was not specifically discharged and that he only assumed that this debt was discharged with his other debts by virtue of the conclusion of the bankruptcy.)

7. This Court further concludes that based on all the evidence presented at trial, Davis has failed to show that undue hardship would result from enforcing the student loan debt at this time.

Statute of Limitations [2]

■ 8. At the conclusion of this trial, the Court requested that the United States brief the issue of whether this action is barred under the provisions of the Higher Education Technical Amendments of 1991, Pub.L. 102–26, section 3, 105 Stat. 123 (codified as amended at 20 U.S.C. § 1091a(a)) (April 9, 1991), which abolish the statute of limitations found in § 484A of the Higher Education Act, as amended, codified at 20 U.S.C. § 1091a(a). The only district court to have applied the Higher Education Technical Amendments of 1991 appears to have concluded that those amendments are retroactive only to 1985. *See United States v. Friedenberg,* No. CV–90–0707, 1991 WL 352884, 1991 U.S.Dist. LEXIS 15440 (E.D.N.Y. Sept. 20, 1991).

---

**2.** This Court considers this statute of limitations issue, although it is not entirely clear, even under the liberal standards afforded to *pro se* litigants, that Davis adequately or timely raised a statute of limitations affirmative defense. Davis' one pre-trial filing in this case, his one page answer, stated only that he filed for bankruptcy in 1976, and, upon advise of counsel did not make payments on the student loan debt. However, Davis argued at trial that it is "unfair" that the United States can pursue a debt nearly fifteen years after it becomes due. Finally, in a post-trial submission, Davis presents the question, "Where's the fairness?," but states that "I trust the 'spirit' of the associated components of

this Act was to get at or retrieve what is due to the Government."

Davis' plea for fairness naturally suggests a laches argument, but to the questionable extent a litigant can assert laches against the United States, *see United States v. Crispen,* 622 F.Supp. 75, 81 (N.D.Ill.1985); *see also Berliant v. C.I.R.,* 729 F.2d 496, 500 (7th Cir.), *cert. denied,* 469 U.S. 852, 105 S.Ct. 174, 83 L.Ed.2d 109 (1984), laches does not apply here since Davis does not allege, nor does the record indicate, that Davis suffered material prejudice as a result of the government's delay. *United States v. Lindberg Corp.,* 882 F.2d 1158 (7th Cir.1989).

9. The *Friedenberg* court, without discussion, apparently concluded that the determining factor regarding retroactivity of these amendments is whether a student loan debt was time barred in 1985. *United States v. Friedenberg, supra*, at *2 ("In 1985, the claim was not time barred, and this action was pending as of April 9, 1991.... Accordingly, there is now no bar under federal statute to the plaintiff maintaining its action against Ms. Friedenberg.").

10. Section 1091a of the Higher Education Technical Amendments of 1991 is to be applied as if it were originally part of the Consolidated Omnibus Budget Reconciliation Act of 1985.[3] However, the Consolidated Omnibus Budget Reconciliation Act of 1985, which (the United States astutely points out) took effect on April 7, 1986, not in 1985, provides as follows: "The amendment made by section 16033 [which sets the statute of limitations for the collection of defaulted student loans] shall apply to all grants, including grants awarded before the enactment of this Act...." Pub.L. 99–272, section 16041(e). Thus, this Court concludes that since the 1991 amendments are to be considered as if they were part of the Consolidated Omnibus Budget Reconciliation Act of 1985, § 1091a of the Higher Education Technical Amendments of 1991 applies to all grants, regardless of when those loans were issued or whether claims for repayment of those grants were still viable on April 7, 1986.

11. This interpretation is apparently consistent with a more recent district court opinion, which, in response to an otherwise meritless statute of limitations argument, states:

As the plaintiff points out, even if this contention had merit[,] the "Higher Education Technical Amendments of 1991" moot the argument. *See* Public Law 102–26. Section 3 of the new law eliminates statutes of limitations that applied to suits brought in collection actions for student loans; the amendments specifically apply the provisions retroactively to those cases currently pending as well as to the outstanding loans. Accordingly, Robinson's contentions regarding the government's timeliness in assigning the loan must fail.

*United States v. Robinson*, No. 90–2915–LFO, 1992 WL 88033, 1992 U.S.Dist. LEXIS 4818 at *6 (D.D.C. April 13, 1992).

12. Further, this Court's conclusion that § 1091a of the Higher Education Technical Amendments of 1991 is to be applied retroactively under the Consolidated Omnibus Budget Reconciliation Act of 1985 is buttressed by the legislative history of this amendment:

Some questions have arisen regarding the running of the statute of limitations. The amendment would life the statute of limitations for all time, would apply it retroactively, and would sunset this provision on November 15, 1992 in line with the reauthorization of the Higher Education Act.

131 Cong.Rec. H1813 (daily ed. March 19, 1991) (statement of Rep. Goodling).

13. In summary, the Court concludes that § 1091a of the Higher Education Technical Amendments of 1991 applies retroactively to actions pending on or after April 9, 1991 that have been or will be brought before November 15, 1992, regardless of whether the previous six-year statute of limitations had run prior to April 7, 1986.

14. Any Conclusion of Law, to the extent that it constitutes a Finding of Fact, is hereby incorporated by reference as an additional Finding of Fact by the Court.

15. Any Finding of Fact, to the extent that it constitutes a Conclusion of Law, is herein incorporated by reference as an additional Conclusion of Law by the Court.

### III.   *Conclusion*

Davis has failed to carry his burden of showing that the debt was discharged in bankruptcy, or that to enforce this debt

---

**3.** Section 3(c) of Pub.L. 102–26 provides: "The amendments made by this section shall be effective as if enacted by the Consolidated Omnibus Budget Reconciliation Act of 1985 (Public Law 99–272), and shall apply to any actions pending on or after the date of enactment of the Higher Education Technical Amendments of 1991 that are brought before November 15, 1992."

now would create an undue hardship. Davis is indebted to the United States for the principal amount of $4535 plus interest, computed from the date of default, January 1, 1977, to the date of this Entry at a rate of 7% per annum, and thereafter at the rate of 4.40% per annum, until paid in full.

It is so ORDERED.